Thank you. Good morning again. Miles Pope for Samantha Tainewasher, and I'd like to reserve two minutes for rebuttal. And I would just say that I think there's going to be some interest from the panel on the phone count issue. So certainly take some time on that. I am. So I think I saw the court's scoping order. I really appreciated that. So in light of that, I'm jumping right to that issue. So failing to instruct that, you know, the issue there is that the failure to instruct the jury that the commission of the underlying One second. We can start the clock. Bonus. So basically, the issue there is whether failing to instruct the jury that commission of the underlying drug felony is an element of facilitation, whether that was, you know, obvious prejudicial error. I'm not seeing a ton of pushback on it's being error. So I'm going to focus on obviousness. I'm going to focus on prejudice. Can I ask about that? And I mean, I think you're wise to go to prejudice because but on obviousness, is it true that a because we don't have any Ninth Circuit precedent on this. Right. That saying that it was actually it's constitutional error. That's correct. We do. So there's a lot from other circuits. Is that enough under the plain error standard? So first, I would say that, you know, and this is something that I don't think I emphasize enough in my briefing. Powell is a Ninth Circuit case, the Supreme Court case that arose from the Ninth Circuit. And, you know, Powell is the case where the government characterizes it as sort of passing dicta about how there appears to be uniform agreement among the circuits that this is an element. Is that and I guess that's my question is even that. Is that enough or do we need an It's a weird deal because we've had this issue and we've never published on it. Yes. I guess the question is, do you have to have a published opinion? Well, so to answer that question directly, because I also want to loop back to there might be more support in the Ninth Circuit than than it first appears. But to answer that question directly. Yeah. No, you need to have it's the uniform weight of out-of-circuit authority is enough to establish plain error. And, you know, I think there's that makes good sense in the Ninth Circuit. No, you have not said that. Well, I mean, but you should. And I'll tell you, I mean, I'll tell you one of the among other reasons, it makes good sense. But one of the main, you know, a significant consideration in favor of that is that other circuits have the Tenth Circuit has said it before circuits have said quite a few circuits have said it. That's I completely agree with that. So it's you know, I highlighted the Tenth Circuit, but we've got exactly I could run through them more of them. But suffice it to say, there's an overwhelming weight of out-of-circuit authority on sort of the methodological question. And there's agreement that if there's uniform weight within the, you know, sort of what if there's no case law, can it be plain just on the statute? Or is that is that is any court weighed in on that? I don't know if any courts weighed in on that. But I this court has in a related context of the guidelines certainly said that the text of a guide of a sentencing guideline itself can can can establish plain error. So that that the logic of those decisions, which I'm sorry, I don't have the citations off the top of my head. But the logic of those decisions would extend, I would think, to the statutory context. And certainly if the statute, for example, had an affirmative defense in the statute and the district court refused to offer the affirmative defense, that could be plain error because the statute says there's an affirmative defense. Yeah, that seems that seems obvious to me. I agree. And, you know, I will be I'm just gonna be candid with the court. Well, I, I, those are all my questions. I think the bigger issue is the second the second one. But I was just sort of intrigued by some of these methodological issues. No, understood. And unless there are any other questions on obviousness, I will switch to prejudice. And, you know, so with respect to sort of why, first, I just, you know, to court circuit, any factual dispute, agree with the government that this was not argued in closing. So that is true. Nonetheless, there are a few reasons why I think it affected my client's substantial rights. It was prejudicial. You know, the first is that jurors are presumed to follow instructions. They're presumed to think very carefully about the case. And there's abundant reason to think in light of the government's evidentiary presentation in this case that a properly instructed jury would have concluded, look, there's just not enough here. Enough here for what? To conclude that the underlying drug felonies, the underlying drug felony, there are three different drug felonies. And that bleeds a little bit into the, the unanimity issue that I raised on this count. But, but the allegations essentially, you know, I think that if I were to plead it as the government, or if I was going to try to get that instruction in there, I would say, look, you know, we're alleging that Miss Tainwasher distributed or attempted to distribute or possessed with intent to distribute based on these Facebook messages, different types of drugs. Right. But so with possession with intent to distribute or attempted distribution, those are two of the three, right? It seems like the Facebook messages pretty clearly, I mean, at least as to attempt, it seems like it's overwhelmingly that this was attempt. I mean, how do you read these any other way? Well, you saw a few different ways. Well, first you can read them as, as essentially an addict's idle drug talk. And it's very clear that there's, you know, and okay, as an addicts, but there's also evidence that she was a drug dealer. She's not just an addict. She was a drug dealer, right? Well, I, you know, I'm not going to, I think that is, that is fair to say, that is fair to say that there was sort of atmospheric evidence, but here's another, I mean, I have never seen the government and you know, I federal defender for quite a while before I haven't seen this either, but I mean, I did, the question is, is it plain error? I mean, that, that's always the problem, but then I agree with that, but there's, I think that, you know, which prong we're under matters here because, you know, at, at the, at the, at the sort of prejudice prejudice or affect substantial rights, the actual analysis is, is not whether it obviously affected substantial rights and whether there's a reasonable probability that a properly instructed jury, juror, jury would have, would have acquitted and reasonable probability this court has held is, is not a really high bar to clear. It's less than preponderance of the evidence. So you're looking at threadbare evidence. I just don't, I, that's what I'm wondering. I get your point. I think you have a stronger point on the actual distribution because there's, I mean, the Facebook messages don't say, hey, did you like the drugs I delivered? Like, you know, so, so we, we do have the Facebook messages stopping at a certain point, but as to attempted distribution, I just seems pretty overwhelming. It's hard for me to imagine a juror not convicting of attempted and whether they should have, I mean, I'm going to have a question for the government, like, you know, what's the point of this count at this point, but, but separate from that, like, it seems like it's pretty overwhelming that he did it. Let me just jump in here. Cause I mean, obviously you have a, you have possession with intent to distribute, but I was in AUSA for a long time and I don't remember there being a charge of attempted on the narcotics statute. There's no attempt. So I agree with that. Oh, so I, that attempted is not going to cut it for a phone count, right? It has to be actually be possession with intent to distribute or actual distribution. I agree with that. Yes. Okay. Just, just one more thing. Okay. I thought attempt was, attempt was charged, was attempt one of them or not? It's not one of them. It's not one of the three. It was, so it was, it was alleged in there is this like bundle of it, but I, I agree that I agree with that point. I agree with that. Yes. Even though no one ever, the defense counsel never actually said, Oh, Hey, by the way, this doesn't even exist. So, so let me ask this question. If the jury thought they could, thought that an attempt was sufficient and it isn't a crime, then what happens? So, you know, I, I think so sort of the way I would approach that issue in light of, of how the case unfolded is to where the unanimity comes in, I guess that it's certain. So that's certainly, it's, it's certainly implicated, but I think it's a problem if the jury jury convicted of a crime that doesn't exist, that's certainly true. I think this, but I think again, it just sort of, you know what I would, what sort of in light of kind of where sort of the core issue, which is this, this question of, you know, do underlying drug felonies, you know, actually count, you know, basically do you, do you have to plead those as an element? I think it just, again, goes to the prejudice analysis and there's a reasonable probability that a properly instructed jury would have, would have acquitted. Let's talk about possession with intent. Then we all agree that that is a chargeable offense. Yes. How is that different than attempt? I mean, possession, I mean, I guess the, the argument would be, well, I mean, it's back to your same point. It was bluster. You know, I didn't really have drugs. I was just, you know, saying I was going to sell it, but there's no proof I actually had them. Yes. And, and, you know, We do know that she did have them. I mean, not necessarily at that time. Not at that time. And, and what I would say, you know, the government and I, I appreciate the, the, you know, I think the rhetoric is good. Like they're, the government's, you know, it's an articulate brief. The government characterizes this as you're doing role, imagining that she's doing role player fantasy, basically. And that's what, that's what the jury would have to believe. That's just not true on the facts. I mean, a juror, you know, drug, if someone who's in the midst, in the grips of an addiction can, can have aspirations that they do not realize. And I've just never seen, again, to, to go back to, to, to an earlier point, the, the government seek, even seek to bring a charge based on sort of idle drug talk across Facebook Messenger without any independent corroboration. So let me ask you just a practical question that I appreciate having both of you answer. Given the sentence that was imposed, what would be the practical effect if we were to agree with you on this piece of the case, but not on the other count? Well, the, the, I think that actually is more in the government's purview than mine, just because I guess the question is not so much the legal mechanism. The legal mechanism is very clear. It would be reversed and remanded. And I think a new, for a new trial, because I didn't raise a sufficiency claim on this. I've, I've raised a jury instructional error. A new trial on the, you'd have to do it on the other, uh, on the underlying claims as well. It would only be on, on this count. Yes. This, this, this is a, I think I'll, I'll ask a different way. Realistically, this, if these counts are thrown out, your client would get the special assessment money back, but there's real no effect on the sentence in this case, correct? That's correct. So does that factor into plain error? The fact that at the end of the day, it would be a refund of however many $300 or whatever would be, is that, is that really what we're talking about here? Well, no, absolutely not. And I think, I guess that question falls more under the fourth prong. Like, is it in the interest of justice to reverse for reimbursement? And the answer is no, because you were, you were reversing a felony conviction. Um, and that's a very serious matter. I understand that there's also another conviction in this case, but, but this, but, but my client has been convicted on, in my view, plainly erroneous jury instructions of, of a felony drug offense. And I would assume that there would be also collateral consequences from certain drug offenses. You might lose food stamps and other federal benefits. Absolutely. That would not be the case for count one. I believe that is correct. I'm, I mean, I'm, I'm, I'm like 99% that you do not lose, that it's the drug, it's the controlled substance act in particular that implicates those collateral consequences. Yes. Do you want to reserve some time? I do. So I will go ahead. Well, I do, but I, and this is, I appreciate the, I understand where, I'm just going to briefly talk about the involuntary manslaughter because, you know, here's, here's my, my perspective on that. Like I understand and appreciate trial counsel's frustration with the way this case was pled, where there's the, the allowing the, the, the victim to be in the house for three days. And, you know, then you combine that with the March 27th to March 29th kind of timeframe. And then, you know, you couple that with the government's argument at, during closing about, you know, that, that really does kind of ask the jury to say like, you know, we know what happened on March 27th. We know that Ms. Tanewasher engaged in conduct that I would not disagree was, was reckless conduct. So we know that on March 27th and then we see on March 29th, you know, without much information about what happened in between the death. And so I, I've, you know, the combination of the way the instruction was drafted and the use of the, the allow and that continuing offense. And then that argument to me does mislead the jury into not thinking we need to believe that, that Ms. Tanewasher on, at the moment that Stephen died engaged in recklessness or even beforehand engaged in recklessness that was in the scope of the, that created the scope of the risk that caused his death. I could see how there'd be more of a, you know, the jury would be highly tempted to convict based on the, the, the negligence on March 27th without connecting the dots to March 29th. I will reserve the rest of my time. Thank you. Good morning, your honors. And may it please the court. My name is Michael Ellis and I'm an assistant United States attorney based in Spokane, Washington. I was also one of two trial counsel for the United States before the district court. So I will also go straight to the 843B telephone count issue. And I think the court has highlighted a number of reasons why the intricacies of plain error review are so important when analyzing the 843B telephone count. So I'll start with the, the, the plainness or the obviousness and how this court has, has discussed that kind of whether an error is sufficiently plain or obvious to trigger plain error review is the error has to be so clear cut, so obvious that a competent district court judge would avoid it without the benefit of objection from counsel. And here, as was noted, there is no binding precedent from this court. That's true, but our decision in Powell implicitly, it made sense only if the completed crime had to be part of the mix on the instructions and several other circuits have held that this is required. Nobody that I could find, no circuit court has ever held to the contrary. Why isn't that plain? That doesn't speak to prejudice, but it certainly speaks to me to plainness. So two reasons to start, I guess one reason for each, each category. So starting with Powell and the circuit's opinion going up to the Supreme Court and then the Supreme Court's a footnote in their own opinion, um, that case was not directly addressing the elements of the offense. It was all about inconsistency of the verdict, but it pointed in the same direction. It, it, it certainly doesn't do anything to undo the, the other circuits that have unanimously, as far as I can tell, held that this is a requirement. No, that, that's true. It doesn't, it doesn't undercut the other, the various opinions of the other circuit and that circuits and that analysis. But what it does do is, again, we're looking for whether this court, perhaps in Powell, you know, making indications or inferences that perhaps that is the rule is if that opinion is sufficiently, um, clear cut and the unanimity of a number of circuits sufficient. And so that goes back to whether it's so clear cut, so obvious that a competent district court judge would have caught it. So a district court judge in this circuit, the opinions of other circuits are in no way binding on a district court judge sitting in Yakima, Washington. Those opinions may be persuasive. The court could look to those if the court so chose for persuasive authority for, for other reasons, but they are not binding. And so to find that, uh, to, to, you're saying that a district court, even in the face of eight circuit court precedent and there's nothing in the Ninth Circuit, theoretically, a district court could look at this in the first instance and say, I'm just going to come out the other way. Yes. I think that that is the name. I mean, theoretically, a court could do that. That's the nature of circuit splits. Circuit splits can often, or it can be. Well, it can do that. But then the question is, you know, looking at the wording of the statute and that unanimity, is that decision to go the other way, plain error? Of course you can do it. That's what happened. And so I think what it comes back to is whether, if, is, if a district court judge, when faced with an absence of binding precedent from this court, from the Ninth Circuit, is not competent for not then engaging in a survey, essentially, of the opinions of other circuits that are not binding on the district court to determine if there is a consensus. Well, basically what you're saying is a district court doesn't have to do any legal research. And that doesn't, that doesn't make sense to me. So I think they are obligated to say, if this court, well, I think we'd be having a very different conversation if this court had as, as explicit an opinion concerning this issue. Well, and we'd also have a different issue if it had been raised. I mean, you're talking about doing research on an issue that hadn't been raised. I mean, if this came, I just see if you can be candid on this question. If this wasn't under plain error, would you be saying there was no error here? No. I think there, there, there, and I say this with, I think we, I think, I was one of trial counsel below and as pointed out, trial counsel to include myself and the district court made statements outside the presence of the jury that were not consistent with that rule of the other circuits. I think that goes in part to why this is, by plain error review is so important here because we are analyzing this issue under a standard of review that is very deferential to what happened because it was not raised below. So we are here on plain error review. And again, I think to, to jump into prejudice here, I think this is why plain error review and the nature and purpose of plain error review is so important here. When you get to the attempt issue, do you, you charged attempt, you, do you agree that there is no such charge? No, there is, there is certainly a charge for attempt. So 21 United States code 846 basically makes it a felony to conspire or attempt to commit a drug offense. So for example, to charge attempted distribution of controlled substances under federal law, you would charge 21 United States code section 846, attempting to commit a violation of 21 United States code section 841 distribution. So no, I do not agree that that is not an offense. I think it is very clearly an offense. It may not be an offense that is regularly before this court, but it's nonetheless a cognizable offense under the controlled substances act in title 21. So I think it is an offense that is chargeable, even if it may not be an offense. If that objection had been raised below, you would have said, no, we're, you know, we're going forward with the charge. Yeah, I think we would, we would have stuck to our guns on, on the, on that as an included felony underlying drug felony for the 843B offense. Cause I think it is an offense that can be structured and committed in violation of title 21 through 21 United States code section 846. So I think, so I think that that is, uh, so I very much disagree with, with, with that part of the discussion. No, no, I, I see why I was, I've never heard of an 846 attempt charge, but I'm, I'm looking at the language of 846 and it does say attempt. I've never seen it charged ever. Um, have you ever seen a charge ever? It was. No, it wasn't charged in this case. It wasn't charged in this case. You can imagine, but it's, it's also not like you can imagine scenarios in which perhaps it would be charged aborted drug transactions perhaps. Um, at the last, you know, that there are situations Normally you charge 846 as a conspiracy. That is the far, far more typical way that I've seen it charged. But I know you're right. It's, it, it does say it in 848. I stand corrected. I've again, never seen it, but it's there. And again, 843B criminalizes the facilitation of any, of any other felony under those relevant subsections, which include that the potential for attempting to commit an 841 violation. So I think it is a cognizable offense under the, under title 21. Maybe I'm getting, were you thinking about this as an, I mean, did it come up? I mean, it was a chart, but did it come up as attempt? I mean, was that a discussion in, in the case like between counsel or with the judge or? So I don't think anyone necessarily pick, I don't, I don't recall anyone necessarily picking at the intricacies of, when we, in briefing the issues before this court of the three different Facebook messages that were kind of the focus of the 843B count, um, it, it was, you know, our kind of the theory, at least that, uh, two of them were certainly in the attempt and possession with intent realm. Um, the, the ones just discussing the negotiating and that sort of thing. And then the third exhibit 88, the one with Ms. Waters, which describes Ms. Tainwasher sort of real time, um, discussing like, where are you? I'm out, you know, I'm out back. That one was believed to be sufficiently close enough to justify describing it as distribution because she was describing at least, at least where a rational jury could find that that distribution had actually occurred because she was describing actually going to meet up to the point of I'm out back. So you think that distribution, do you think you're, you've got a strong case on distribution itself? I'm not going to say there was, it was a ridiculously overly strong case, but I think in terms of the facilitating, but facilitate, but again, it's a, what a rational jury would have concluded, could have concluded when taking all the inferences in the United States is, um, going. I don't think she said she was out back. I thought she said she was on her way, but let me ask you another question about the plain error and, um, the model instruction, uh, contains the, the, uh, the court instructing the jury that they, that they have to find that the defendant knowingly or intentionally used a specific method of communication to help bring about a specific illegal act as charged in the indictment. So that's, and that was not how this jury was instructed. Does the model instruction do anything to demonstrate that the court should have noticed that it's mistake? So I think in this case, not just because the, the model instruction, I think is clearly designed for a situation in which say count one is distribution and count two is using a phone or some other communication facility to facilitate the conduct in count one. The scenario that was charged here was those underlying drug felonies were not charged. And so it would, it would have made sense to say. Well, that would seem to me to alert the court even more to the problem. And again, I don't think that... What is the, what is the act that I have to put into that blank? And the act was what was put in by the district court, which is the underlying drug felonies, the possession, intent to, possession with intent distribution and attempted distribution. So what, at least how that was read below was those specific illegal acts or acts was referencing the alleged drug felony under title 21, which is what ultimately was reflected in the instruction. And that was where the three alleged underlying drug felonies, which and those are underlying drug felonies were alleged as what had to be facilitated by the use of the communications facility. So I think it, how it was read at least, and how it still reads is this instruction is designed for a scenario that was not present before the district court. And so that's what in part led to the, the divergence from this court's model jury instruction. And as the model jury instructions themselves say, you know, they're, they're not the be all end all of, of, of instructing a jury, they're, they're guides. And in this case, they didn't fit the facts. In the standard case, that's, that's where count one is the drug offense. If the jury finds the person not guilty, then they would necessarily find them not guilty under this count as well. I said, I think that that's what Powell is about, where they did, they did exactly the opposite of that. They found the person not guilty of the substance, I believe, and guilty of the phone count. But I think, again, in this case there, it's, it's, the model jury instruction was of less use than in other cases because it didn't match how the, how the allegations were charged in the indictment. I think that the main, the strongest point, again, candidly, the strongest point for the Department on Plain Error Review is that this was like the cotton, in cotton, the Supreme Court uses essentially uncontroverted or essentially uncontested as a very relevant aspect of prejudice under Plain Error Review. And here we're not in even essentially uncontested land. We're in entirely uncontested land. This count, the, the, the messages were not raised by defense counsel or mentioned by defense counsel during closing. Then this count was not mentioned at all. Ms. Tamewasher did not ask the jury to even acquit her of this count. It was not mentioned at all. I think the government's position would be a lot weaker if there was even one passing mention, if there was even a throwaway comment at the end, and you should acquit Ms. Tamewasher of all charges. I think even if that had been uttered, the government's position here on prejudice would be much weaker. But we are in a world in which ... I agree with you, counsel, but it, I mean, in some ways it almost goes to the point of no one was really focused on this because, I mean, as Judge Graber's pointing out, I mean, you're right as, I think you're right as a technical matter, you could have gotten this, and I'm assuming you brought it sort of as a belt and suspenders, you know, approach to the case, which you're entitled to do, but you got the belt. So do you need the suspenders, I guess is the question. And I, maybe there's nothing to do about that now, but, you know, I think that there was sort of a presumption that, hey, we're all here to, you know, figure out whether she's guilty of this underlying crime, and she was. And I think, you know, obviously the crux of the case was not the phone counts. The crux of the case was the death of the 15-month-old. But nonetheless, Ms. Tamewasher was convicted of the phone count, and we are here on plain error review, and I do think there are a number of ways, either through the obviousness or lack thereof of the error, or the prejudice. A number of ways. I guess what I'm wondering, there's prosecutorial discretion on the front end. Is there prosecutorial discretion on the back end? I don't know the answer to that question as well. I can say with my remaining time that, in terms of this court's question about the practical consequences of this, I agree with counsel. I think there are practical consequences that do justify this court not just brushing this off, as the issues raised. It's only a $100 special assessment, but that is still a penalty. And I think counsel's right that those other government benefits issues could come in as well. So I do think there are practical issues, and I think the reality would be if this court did find that there was a plain error, the government would have a choice on remand as to whether to... But you don't have a choice before that? I mean, hypothetically, we have a choice. I personally do not have a choice before then. I think to do what the court is suggesting is a choice beyond my... Above your pay grade. Above my pay grade, exactly. So I'm here defending what happened before the district court, and defending the jury's verdict, and in a posture that is very sympathetic to that verdict on plain error review. So unless the court has further questions for me, thank you. Thank you very much. Thank you. And I, too, was bollocked up by the actual practice under 846. I double-checked. I didn't actually brief that attempt is not a controlled substance offense, so I'm happy to say that that's true. Because I agree that it is. But I think prejudice is the core here. Unless the court has questions, I think the model jury instruction point on obviousness is well taken. And just to emphasize, you know, the fact that the Ninth Circuit has presumed that substantive counts will be charged in connection with a facilitation charge, to me, puts a court on notice that that's how this crime is structured. And then you can immediately see the Supreme Court has weighed in and all of the circuits have weighed in. So that seems like that's obviousness. On prejudice, you know, if... I guess one way... Another way to articulate it is a properly instructed jury. You could imagine deliberations going like this in the jury room. They could say, look, we heard nothing about, from any witness who Ms. Tainwasher was alleged to have distributed drugs to, about whether she showed up, about whether they received drugs from her, about whether, you know, about whether we lost, you know, basically those factors, you know, about whether, you know, it's happened in the past. We heard nothing whatsoever. We didn't see a direct confession from Ms. Tainwasher either. All we have are these Facebook message exchanges and it's just not enough. And so I think, you know, in light of the real impact that this conviction can have on Ms. Tainwasher's life going forward as she tries to rebuild from this terrible tragedy, it is worth reversing. And I would ask the court to do so. All right. Thank you, counsel. I want to thank both of you for your briefing and argument. Mr. Pope, how many cases did you have this week? Not just argued, just briefed on this calendar? Well, yeah, three. Three. Anyway, you've done a very good job on all the cases. So I want to thank you very much. You've been a repeat player and you've been a pleasure to have before us this week. It's been a delight. Thank you so much. Thank you. All right. This matter is submitted.
judges: GRABER, OWENS, NELSON